Stewart L. **UDALL**, Secretary of the Interior, Appellant,

v.

John J. **KING**, Appellee.

No. 16859.

United States Court of Appeals District of Columbia Circuit.

Argued May 15, 1962.

Decided Sept. 27, 1962.

Mr. Thomas L. McKevitt, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Clark and Mr. Roger P. Marquis, Atty., Dept. of Justice, were on the brief, for appellant.

Mr. James S. Holmberg, Denver, Colo., of the bar of the Supreme Court of Colorado, pro hac vice, by special leave of court, with whom Mr. Richard H. Speidel, Washington, D. C., was on the brief, for appellee.

Before BAZELON, BURGER and WRIGHT, Circuit Judges.

BAZELON, Circuit Judge.

On the authority of our decision in Barash v. Seaton, 103 U.S.App.D.C. 159,

256 F.2d 714 (1958), the District Court granted summary judgment requiring the Secretary of the Interior, our appellant, to issue a non-competitive oil and gas lease to our appellee, King, on certain lands of the public domain. We think that case clearly distinguishable and that appellant is entitled to summary judgment.

By authority of § 17 of the Mineral Leasing Act of 1920, as amended, 30 U.S. C.A. § 226, the Secretary of the Interior may lease lands subject to the Act if they are known or believed to contain oil or gas deposits. If the lands to be leased are not within any known geologic structure of a producing oil or gas field, § 226 requires the Secretary to issue a lease to the first qualified applicant. If the lands are within such structure, they must be leased to the highest responsible qualified bidder by competitive bidding. Whether lands are within such structure is a determination which the Secretary has delegated to the Director of the Geological Survey. The Secretary's regulations require the Director to define the boundaries of the structure and delimit the definition on maps filed in the appropriate field offices. Mineral Leasing Act of 1920 § 32, as amended, 30 U.S.C.A. § 189; 43 C.F.R. § 192.6. Notices of these determinations have been published in the Federal Register since the effective date of the Administrative Procedure Act of June 11, 1946, c. 324, § 3(a) (3), 60 Stat. 238, 5 U.S.C.A. § 1002(a) (3).

In Barash, a non-competitive lease application for 954.51 acres was filed on June 5, 1953. In September 1954, more than a year later, the applicant learned, in the course of trying to expedite issuance of the lease, that the land had been offered for competitive leasing in July 1953 and that leases had been issued to others without notice to him. In the proceedings which followed the applicant's protest, it was disclosed that the decision to offer the lands for competitive leasing was based upon a memorandum from the Geological Survey—dated June 12, 1952—more than a year before the filing of the lease application. This memorandum stated that since the lands in question "may be subject to drainage of its oil and gas content * * * the Geological Survey *recommends* that [they be offered for competitive leasing]." In response to a later inquiry following applicant's protest, the Geological Survey admitted in a memorandum dated February 11, 1955, that, when it reported on June 12, 1952, that these lands " 'may be subject to drainage,' no determination had been made as to whether all of the lands were or were not within a known geologic structure." It went on to state that, based upon a review as of June 5, 1953—the date of the lease application—618.61 acres were not within such structure and 335.90 acres were "believed" to be.

We held that the "recommendation" contained in the Survey's memorandum of June 12, 1952, did not satisfy the requirement for a "determination." And that "even with respect to the [335.90 acres], the belated 'determination' in the Survey's February 11, 1955 memorandum stated only that these are 'lands believed to be within the known geologic structure.' " We pointed out that the Secretary's authority to lease lands competitively which were "believed" to be within such structure was amended in 1946, over his objection, to lands which "are" within such a structure. We also noted that no map showing the definition of the structure was ever prepared or filed, or noticed in the Federal Register. Finally we made clear that "by the Secretary's failure either to take the prescribed steps or to give appellant actual notice that the lands were subject to competitive leasing before such leasing was accomplished, appellant was deprived of the opportunity of acquiring any kind of lease." "The Secretary [did] not claim * * * that his construction of the law and regulations is consistent with established practices of the Department." We deemed the total effect of the administrative action unreasonable and arbitrary and ordered issuance of non-competitive leases for all the lands in question.

In the present case, King was also the first qualified applicant and, as in Barash, no map had been filed by the Geological Survey, nor had there been publication in the Federal Register when he filed his application. But there the similarity ends.

King filed the application to lease the lands in question on July 13, 1959. Upon prompt inquiry of the Cheyenne Land Office, the Geological Survey advised on September 11, 1959, that such lands "were in an undefined addition to the known geologic structure of the Big Piney-La Barge field effective April 28, 1959, and these same lands are now in the known geologic structure as revised on September 2, 1959." The Cheyenne Land Office received a plat on September 17, 1959, showing these and other lands within that field, with a recital that its effective date was February 28, 1959. Its approval by the Director of the Geological Survey on September 2, 1959, was based upon the recommendation made on April 28, 1959, by a group of his field employees, known as the Oil Board; and its "effective date" of February 28, 1959, was based upon the "completion date of the last completed well on the basis of which the [revised plat] was made."

Thus it appears that, after a non-competitive lease application had been filed for lands not shown on maps filed in the land office to be within a known geologic structure, the Geological Survey promptly determined, from information available on the date of the lease application,[1] whether the lands were within such a structure on that date; and the applicant was promptly advised of this determination so that he could participate in the offer for competitive leasing. This procedure, which was not followed in Barash, comports with the long-standing practice of the Department described in John P. Dever, 67 I.D. 367 (1960).

It is not feasible, of course, to map immediately the constantly developing information concerning geologic structures in all the public domain. John P.

Dever, supra. But this limitation does not preclude a fair and orderly system of leasing. We think it was achieved here by the reasonably prompt mapping of geologic information based upon the determinations required by law. If that course had been followed in Barash, it is clear that the applicant would not have been "deprived of the opportunity of acquiring any kind of lease."

Reversed.

---

1. Cf. Wann v. Ickes, 67 App.D.C. 291, 92 F.2d 215 (1937).